No. 25-20085

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

**CHERIE FOUNTAINE; HAILEY KING**
**Plaintiffs—Appellees**

v.

**U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE FOR TOWD POINT MORTGAGE TRUST 2019-4,**
**Defendant-Appellant**

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

---

### APPELLANT'S BRIEF

---

Michael J. McKleroy, Jr.
HINSHAW & CULBERTSON LLP
1717 Main Street, Suite 3625
Dallas, Texas 75201
Telephone: 945.229.6380
Facsimile: 312.704.3001

Alfredo Ramos
HINSHAW & CULBERTSON LLP
5151 San Felipe Street, Suite 1380
Houston, Texas 77056
Telephone: 346.553.4512
Facsimile: 312.704.3001
**ATTORNEYS FOR**
**DEFENDANT-APPELLANT**

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

1.     Number and style of case in district court:

     No:        25-20085; USDC No. 4:23-cv-801

     Style:     *Cherie Fountaine, et al. v. U.S. Bank National Association, as indenture trustee*

2.     The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal:

     Appellees:     Cherie Fountaine and Hailey King

     Counsel:     Michael E. Keller
                    The Keller Firm
                    5540 Harvest Hill Road, Suite 233
                    Dallas, Texas 75230

     Appellant:     U.S. Bank National Association, as indenture trustee for TOWD Point Mortgage Trust 2019-4 (**U.S. Bank**)

     Counsel:     Michael J. McKleroy, Jr.
                    Hinshaw & Culbertson LLP
                    1717 Main Street, Suite 3625
                    Dallas, Texas 75201

                    Alfredo Ramos
                    Hinshaw & Culbertson LLP
                    5151 San Felipe Street, Suite 1380
                    Houston, Texas 77056

                    */s/ Michael J. McKleroy, Jr.*
                    Michael J. McKleroy, Jr.

## **STATEMENT REGARDING ORAL ARGUMENT**

Oral argument is not necessary.  The facts and legal arguments are adequately presented in the briefs and record, and oral argument would not aid the decisional process.  Fed. R. App. P. 34(a)(2)(C).  If the court requests argument, U.S. Bank requests permission to attend and argue.

# **TABLE OF CONTENTS**

STATEMENT REGARDING ORAL ARGUMENT ............................................. iii

TABLE OF CONTENTS .......................................................................... iv

TABLE OF AUTHORITIES ................................................................... vi

I.    JURISDICTIONAL STATEMENT .................................................1

II.   STATEMENT OF THE ISSUES ....................................................2

III.  STATEMENT OF THE CASE .......................................................2

    A.    U.S. Bank's loan. ..............................................................2

    B.    Ms. Fountaine and Ms. King obtain title to the Property......................3

    C.    The status of U.S. Bank's loan at the time the transaction closed.........3

    D.    Appellee's claims. ..............................................................8

    E.    The district court's findings of fact and conclusions of law. ...............8

IV.   SUMMARY OF THE ARGUMENT ..................................................9

V.    ARGUMENT.............................................................................10

    A.    Standard of Review. .........................................................10

    B.    The district court erred in requiring U.S. Bank to release its deed of trust due to payoff statement SPS did not provide to Texas Title....................................................................................11

    C.    The trial court improperly excluded U.S. Bank's corroborative evidence. ........................................................................15

V.    CONCLUSION...............................................................................18

CERTIFICATE OF COMPLIANCE.......................................................19

CERTIFICATE OF SERVICE ...............................................................19

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Brumfield v. Cain*, 808 F.3d 1041 (5th Cir. 2015)..................................................12

*Gray v. Lucas*, 677 F.2d 1086 (5th Cir. 1982) ........................................................16

*Guzman v. Hacienda Recs. & Recording Studio, Inc.*,
    808 F.3d 1031 (5th Cir. 2015) ...........................................................................12

*Kinnard v. Homann*, 750 S.W.2d 30 (Tex. App.—Austin 1988, writ
    denied)..............................................................................................................13

*Lewis v. Jacksonville Bldg. & Loan Ass'n*, 540 S.W.2d 307 (Tex.
    1976) ................................................................................................................14

*Lopez v. Munoz, Hockema, & Reed, LLP*, 22 S.W.3d 857 (Tex. 2000) ..................16

*McEvoy v. Select Portfolio Servicing, Inc.*,
    No. 3:16-CV-2296-B, 2017 U.S. Dist. LEXIS 77118 (N.D. Tex.
    May 22, 2017) ..................................................................................................15

*Rodriquez v. Midland Cty. Hosp. Dist.*,
    No. 21-50635, 2022 U.S. App. LEXIS 14704 (5th Cir. 2022)..........................16

*United States v. Crawley*, 533 F.3d 349 (5th Cir. 2008) .........................................12

*United States. v. Hart*, 295 F.3d 451 (5th Cir. 2002) .............................................12

*United States v. Stephens*, 571 F.3d 401 (5th Cir. 2009)........................................12

*Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006)...........................................1

*Woods-Tucker Leasing Corp. v. Kellum*, 641 F.2d 210 (5th Cir. 1981)..................16

**Statutes**

28 USC § 1332(a) ...................................................................................................1

Tex. Fin. Code § 343(g) ........................................................................................10

Tex. Fin. Code § 343.106(g).................................................................2, 10, 11, 12

Tex. Fin. Code § 343.106(g)(2)(A).......................................................................10

Tex. Fin. Code § 343.106(b) ...................................................................... 13

**Other Authorities**

Fed. R. App. P 4(a)(7)(A)(ii) ...................................................................... 1

Fed. R. Civ. P. 58(c) ...................................................................................... 1

Fed. R. Evid. 103(a)(2) ............................................................................... 16

Tex. R. Evid. 401 ......................................................................................... 18

Texas Administrative Code § 155.2 Title 7 ......................................... 11, 13

# I.    JURISDICTIONAL STATEMENT

This is a diversity case.  28 USC § 1332(a).  Cherie Fountaine and Hailey King are California citizens because they are individuals domiciled in California. (ROA.10.)[1]  U.S. Bank is an Ohio citizen because it is a national banking association with its main office in Cincinnati, Ohio.  (ROA.10-11, 138-143, 148.)  *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 306 (2006).   The amount in controversy exceeds $75,000 because the fair market value of the property at issue was $449,640 at removal.  (ROA.12, 82, 143-145.)  The district court denied the Appellees' remand motion on May 1, 2025. (ROA.3, 1843-1845.)

This court has jurisdiction to review matters in the notice of appeal. (ROA.1598.)  The district court's findings of fact and conclusions of law entered on September 13, 2025 became a final judgment on February 10, 2025. (ROA.1586-1591); Fed. R. App. P 4(a)(7)(A)(ii); Fed. R. Civ. P. 58(c).

---

[1] JJP Capital Group, LLC (**JJP Capital**) was previously a plaintiff in this case, but on September 20, 2023, it filed a motion for nonsuit and voluntarily dismissed its claims. (ROA.593.) The district court entered an order non-suiting JJP Capital's claims on September 22, 2023. (ROA.596.)

## II.     STATEMENT OF THE ISSUES

1.     Whether the district court erred in finding the U.S. Bank was required to release its deed of trust pursuant to Texas Finance Code section 343.106(g)?

2.     Whether the district court erred in excluding call recordings related to the payoff statement at trial?

## III.     STATEMENT OF THE CASE

### A.     U.S. Bank's loan.

Efrehem Del Rosario borrowed $200,000 on August 24, 2006 to purchase the property at 26814 Glenfield Hollow Lane, Cypress, Texas 77433 (**Property**) (ROA.1983-2083, 2083-2086.)  He executed a note promising to repay the loan, plus interest, and, together with Maricris Del Rosario, a deed of trust granting a lien against the Property to secure repayment of the note.  (ROA.1984-1985, 2086, 2089.)

The loan was modified twice, in 2008 and 2016.  (ROA.1985-1987, 2108, 2109.)  The 2016 modification stipulated the unpaid principal balance as of August 1, 2016 was $190,753.94 and would accrue interest at 6.125%.  (ROA.1985-1987, 2108-2109.) The modified loan required monthly principal and interest payments of $1,066.22, as well as escrow for property taxes and insurance premiums, beginning August 1, 2016 and continuing on the first day of each month thereafter until July 1, 2056.  (ROA.2109.)  Except as expressly modified, "[t]he note and deed of trust remain in full force and effect." (ROA.1987-1988, 2109-2113.)

The deed of trust is assigned of record to U.S. Bank. (ROA.1988, 2114-2130.) SPS has serviced the loan since October 31, 2019. (ROA.1981-1982.)

**B.**     **Ms. Fountaine and Ms. King obtain title to the Property.**

The Del Rosarios conveyed the Property to Brandan Schild via separate deeds, the second of which was executed by Ms. Del Rosario on November 1, 2021. (ROA.1989-1999, 2131-2136.) On November 16, 2021, Mr. Schild entered into a contract to sell the Property to JJP Capital for $400,000. (ROA.2137-2143.) JJP Capital assigned the sales contract to Ms. Fountaine and Ms. King and provided Ms. Fountaine and Ms. King a loan to purchase the Property. (ROA.2144-2147.)

Texas Title handled the closing of the sale of the Property from Mr. Schild to Ms. Fountaine and Ms. King on December 15, 2021. (ROA.1928-1930.)

**C.**     **The status of U.S. Bank's loan at the time the transaction closed.**

As of December 15, 2021, the loan was paid through August 31, 2020 (due for the September 1, 2020 payment). (ROA.1999, 2165.) From September 1, 2020 through December 15, 2021, no valid payments were made on the loan; every attempted payment made on the loan during this period was returned for insufficient funds. (ROA.1999, 2165.)

In November 2021, at least three attempts to pay more than $30,000 on the loan were made, each of which were initially credited and applied to the loan, but

were ultimately returned due to insufficient funds and reversed off of the loan. (ROA. 1995-1996, 2015, 2022, 2026-2027, 2173-2179, 2188-2190, 2368.)

The last November 2021 payment which was returned for insufficient funds was reversed off the loan on November 29, 2021 and the loan remained due for the September 1, 2020 payment.  (ROA.2021-2022, 2027, 2173-2179.)

During the period of time the November 2021 payments were being applied and later reversed off the loan, SPS generated payoff statements dated November 22, 2021 and November 24, 2021.  (ROA.2007, 2011-2015, 2022-2023, 2161, 2191.)

Both the November 22, 2021 and November 24, 2021 payoff statements accurately stated the amount to pay off the loan on those dates had the payments not been reversed, they did not reflect the true amount to pay off the loan because they included the application of payments which were later returned for insufficient funds and reversed off the loan.  (ROA.2007-2008, 2018-2019, 2021-2023, 2161, 2165, 2191.)

SPS did not provide either the November 22, 2021 payoff statement or the November 24, 2021 payoff statement to Texas Title.  (ROA.1998, 2019-2022, 2161, 2191.)

Texas Title admits it did not request the November 22, 2021 payoff statement from SPS but received it unsolicited from Mr. Schild via e-mail.  (ROA. 1935, 1943, 2272.)

Texas Title admits it knew it could not rely on the November 22, 2021 payoff statement because it was not provided by the mortgage servicer.  (ROA.1946, 2272.)

Texas Title admits it did not rely on the November 22, 2021 payoff statement and did not pay the amount stated therein.  (ROA.1946, 2272.)

Texas Title was never provided the November 24, 2021 payoff statement by anyone.  (ROA.2019-2020, 2191.)

SPS did not receive a payment from Texas Title or anyone else for the payoff amounts stated in the November 22, 2021 or November 24, 2021 payoff statements. (ROA.1998-1999.)

On December 15, 2021, SPS generated a December 15, 2021 loan payoff statement (**Real December 15 Payoff Statement**) and sent it to Mr. Del Rosario via facsimile number 800-878-5776.  (ROA.1990-1992, 2195.)

The $226,733.41 payoff amount stated in the Real December 15 Payoff Statement was the correct amount due on the loan at the time.  (ROA.1994, 2027, 2195.)

Texas Title received a December 15, 2021 payoff statement which reflected a payoff in the amount of $189,859.46 (**Altered December 15 Payoff Statement**). (ROA.1936-1937, 2276.)

The Altered December 15 Payoff Statement was not generated by SPS, was not provided by SPS to Texas Title or anyone else and the payoff amount stated was not the true amount due on the loan.  (ROA.1990-1994, 2197.)

Neither Texas Title nor plaintiffs have any evidence SPS generated the Altered December 15, 2021 Payoff Statement, provided it to Texas Title or that the amount stated in it was the correct amount due on the loan.  (ROA.1946-1950, 1967-1969, 2197, 2276.)

Texas Title admits it did not request any payoff statement from SPS by mail, email or facsimile and did not receive any payoff statement from SPS by mail or email.  (ROA.1946-1947.)

The facsimile line at the top of each page of the Altered December 15 Payoff Statement shows it was transmitted by facsimile number "18008785776" to Texas Title's facsimile number 18322244325.  (ROA.1947, 2276.)

1-800-878-5776 is not a telephone or facsimile number which has ever been owned by, used by or associated with SPS.  (ROA.1947-1948, 1991-1992, 2276.) No evidence was presented to the contrary or otherwise connecting 1-800-878-5776 to SPS.

Texas Title relied on the Altered December 15, 2021 Payoff Statement and wired $189,859.46 to SPS on December 16, 2021. (ROA.1949, 2276.)

On December 16 and twice on December 20, 2021, SPS received telephone calls from a man identifying himself as Mr. Del Rosario and represented to SPS that the payment from Texas Title was not intended to be a payoff, but that he had sold another property, wanted the payment from that sale to be wired to SPS and applied to the loan to pay all past due amounts with the remainder to pay down the principal balance  (ROA.1530, 1991, 1999-2000, 2002-2003, 2204-2206.)

There was no dispute U.S. Bank and SPS, on the one hand, and Mr. Del Rosario or anyone else, on the other hand, about the amount due on the loan at the time SPS applied the $189,859.46 payment.  (ROA.1951, 1967-1968, 2003.)

There was no agreement by U.S. Bank and SPS, on the one hand, and Mr. Del Rosario or anyone else, on the other hand, that U.S. Bank and SPS would accept less than that the full amount due on the loan.  (ROA.1951, 1968, 1988, 2003.)

After SPS applied the $189,859.46 payment, the loan had an unpaid principal balance of $39,730.35 and a due date of March 1, 2022. (ROA.2002-2003, 2165.)

After SPS applied the $189,859.46 payment, no valid payments were made on the loan; any attempt to make payment on the loan after applying the funds were returned for insufficient funds. (ROA.2002-2003, 2165.)

Texas Title's $189,859.46 payment was not the correct amount to pay off the loan and did not pay off the loan. (ROA.1998-1999.)

When Ms. Fountaine and Ms. King purchased the Property, they purchased title insurance to protect their interest in the Property. (ROA.1969.)

**D.    Appellee's claims.**

On January 27, 2023, Cherie Fountaine, Hailey King, and JJP Capital sued U.S. Bank for a judgment declaring its deed of trust "is fully satisfied and no longer an encumbrance on the property" and to enjoin it "from directly or indirectly selling or attempting to sell the property under the power of sale contained in" its deed of trust." (ROA.16-20.) Appellees do not allege the loan secured by U.S. Bank's deed of trust was actually paid in full, but claim they are entitled to rely upon the Altered December 15 Payoff Statement:

> On December 15, 2021, the title company received an updated payoff which was good until December 31, 2021 ("Second Payoff Statement.") A true and correct the [sic] Second Payoff Statement is attached as Exhibit C. The stated payoff in the second payoff statement was $189,859.46. On December 15, 2021, the transaction closed. The transaction was funded the following day on December 16, 2021. On that date, the title company wired $189,859.46 to defendant's loan servicer pursuant to the Second Payoff Statement.

(ROA.18-19.)

**E.    The district court's findings of fact and conclusions of law.**

The evidence outlined in sections A through C was presented to the district court in a one-day bench trial held on January 29, 2024. (ROA.6, 1920.) On September 13, 2024, the district court issued its findings of fact and conclusions of

law and "ORDER[ED] that the deed of trust . . . is EXTINGUISHED and is NO LONGER AN ENCUMBRANCE on the Property." (ROA.1586-1591.)

On the dispositive issue—whether SPS provided Texas Title the Altered December 15 Payoff Statement on which Texas Title relied—the district court conceded "[t]here is no evidence before the court that affirmatively identifies who allegedly sent the [Altered] December 15 payoff statement to Texas Title." (ROA.1586–1591.)   The district court then arbitrarily concluded "based on the record, SPS provided the [Altered] December 15 payoff statement to Texas Title. Tex. Fin. Code § 343.106(g)." (ROA.1590.)   The district court further concluded "[a]s such, the requirements of the Texas Finance Code § 343(g) were met," and U.S. Bank was required to release the deed of trust pursuant to Texas Finance Code section 343.106(g)(2)(A). (ROA.1590.)

This appeal followed. (ROA.1598.)

## IV.    SUMMARY OF THE ARGUMENT

Texas Finance Code section 343.106(g) obligates a mortgagee or its servicer to release its lien against real property only if (**1**) it provided a title company a payoff statement in connection with the sale of real property, and (**2**) the title company paid the amount stated.  To prevail on their claim, Appellees had to prove U.S. Bank's mortgage servicer, SPS, provided the Altered December 15, 2021 Payoff Statement to Texas Title.  Appellees presented no evidence that the Altered December 15, 2021

Payoff Statement was provided to Texas Title by SPS.  The evidence established the opposite; SPS did not provide the Altered December 15, 2021 Payoff Statement to Texas Title.  Appellees presented zero evidence in rebuttal.

Appellees did not even prove the Altered December 15, 2021 Payoff Statement, or any other payoff statement, was requested by or provided to Texas Title in compliance with Title 7 of the Texas Administrative Code § 155.2.  These regulations govern the manner in a title company is required to request a payoff statement from a servicer (by mail, email or fax) and the manner in which the servicer is required to provide it to the title company (by mail or email) in order for the title company to be entitled to rely on it.  Texas Title admitted, and the district court found, Texas Title did not request or receive the Altered December 15, 2021 Payoff Statement in the manner the regulation requires.  This alone should have resulted in a judgment for U.S. Bank.

## V.     ARGUMENT

### A.     Standard of review.

When this court reviews a district court's decision following a bench trial, it applies a standard of clear error to the court's findings of fact and reviews legal issues de novo.  *Guzman v. Hacienda Recs. & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015).  A district court's finding of fact is clear error if it is "implausible in

the light of the record considered as a whole." *Brumfield v. Cain*, 808 F.3d 1041, 1057 (5th Cir. 2015) (quotation marks and citation omitted).

This Court reviews "challenges to the admission of evidence at trial . . . for an abuse of discretion, 'subject to harmless error analysis.'" *United States v. Stephens*, 571 F.3d 401, 409 (5th Cir. 2009) (quoting *United States v. Crawley*, 533 F.3d 349, 353 (5th Cir. 2008)). "If the court errs in its evidentiary ruling, the error can be excused if it was harmless." *United States. v. Hart*, 295 F.3d 451, 454 (5th Cir. 2002) (internal quotations omitted).

## B.     The district court erred in requiring U.S. Bank to release its deed of trust due to payoff statement SPS did not provide to Texas Title.

A mortgagee may only be compelled to release its deed of trust if it provides a title company with a payoff statement and the title company pays the amount stated, even if the amount is wrong. Tex. Fin. Code § 343.106(g). The Texas Finance Commission "adopt[ed] rules governing requests by title insurance companies for payoff information from mortgage servicers related to home loans and the provision of that information, including rules prescribing a standard payoff statement form that must be used by mortgage servicers to provide those payoff statements." Tex. Fin. Code § 343.106(b). "In adopting [those rules], the Finance Commission shall require a mortgage servicer who receives a request for a payoff statement with respect to a home loan from a title insurance company to deliver the requested payoff statement on the prescribed form within a time specified by finance

commission rule, which must allow the mortgage servicer at least seven business days after the date the request is received to deliver the payoff statement." *Id*. at § 343.106(c).  A title company's request for a payoff statement "shall be in writing and submitted to the mortgage servicer by mail, email, or fax."  Title 7, Tex. Admin. Code § 155.2(a).  "Requests for a payoff statement shall, at a minimum, include the following (**1**) name of the mortgagor, (**2**) physical address of the underlying collateral of the loan, or a legal description of the property, and (**3**) proposed closing date of the loan." *Id*.  "Upon receipt of a valid request made under subsection (a) of this section, a mortgage servicer shall provide, in writing, by mail or email, the payoff statement information for the home loan specified in the request which must be provided on the prescribed payoff statement form [] or in a substantially similar format which contains all elements not indicated as optional on the prescribed payoff statement form." *Id*. at § 155.2(b).  These rules have the force and effect of law. *Kinnard v. Homann*, 750 S.W.2d 30, 31 (Tex. App.—Austin 1988, writ denied) ("Valid agency rules and regulations, promulgated within the agency's authority, have the force and effect of law.") (citing *Lewis v. Jacksonville Bldg. & Loan Ass'n*, 540 S.W.2d 307, 310 (Tex. 1976)).

Subject to certain exceptions, "if the mortgage servicer provides a completed payoff statement form that meets the requirements of this section and rules adopted under this section in response to a request for a payoff statement, the mortgage

servicer or mortgagee may not, on or before the proposed closing date, demand that a mortgagor pay an amount in excess of the payoff amount specified in the payoff statement." *Id*. at § 343.106(e). "If a mortgage servicer submits an incorrect payoff statement to a title insurance company that results in the mortgage servicer requesting an amount that is less than the correct payoff amount, the mortgage servicer or mortgagee does not deliver a corrected payoff statement in accordance with subsection (f), and the mortgage servicer receives payment in the amount specified in the payoff statement, the difference between the amount included in the payoff statement and the correct payoff amount (**1**) remains a liability of the former mortgagor owed to the mortgagee, and (**2**) if the payoff statement is in connection with (A) the sale of the real property, (i) the deed of trust or other contract lien securing an interest in the property is released." *Id*. at § 343.106(g).

Appellees' claim that U.S. Bank should be compelled to release its deed of trust because Texas Title relied on the Altered December 15 Payoff Statement fails as a matter of law because there is no evidence SPS provided the Altered December 15 Payoff Statement to Texas Title. (ROA.1947-1950, 1967-1970, 2197, 2276.) The only payoff statement SPS generated on December 15, 2021 was the Real December 15 Payoff Statement sent to Mr. Del Rosario at facsimile number 800-878-5776. (ROA.1990-1992, 2195.) The Altered December 15 Payoff Statement was then faxed to Texas Title from that same number. (ROA.1947, 2276.) The 800-

878-5776 facsimile number has never been owned by, used by, or associated with SPS. (ROA.1947-1948, 1991-1992, 2276.)  There is no evidence to the contrary.

Not only did Appellees fail to present any evidence SPS provided the Altered December 15, 2021 Payoff Statement to Texas Title, Texas Title admitted it did not even request or receive any payoff statement in the manner required by the Texas Administrative Code.  (ROA.1946-1947.)  The district court's findings of fact and conclusions of law completely ignore these regulations and instead suggest Texas Title's "customary procedures and practices" was a meaningful substitution for the Finance Commission's rules. (ROA.1586-1591.) There is no authority to support such a conclusion.

Nor would U.S. Bank be required to release its deed of trust under any other theory.  Any agreement by U.S. Bank or SPS to accept less than the total amount due to discharge the debt or release the deed of trust had to be in a signed writing to be enforceable. *McEvoy v. Select Portfolio Servicing, Inc.*, No. 3:16-CV-2296-B, 2017 U.S. Dist. LEXIS 77118, at *6 (N.D. Tex. May 22, 2017) (collecting cases). Appellees offered no such writing or established any intent by U.S. Bank or SPS to accept less than the total amount due. (ROA.1951, 1968, 1988, 2003-2004.) Because the uncontroverted evidence shows $226,733.41 was owed and only $189,859.46 was paid—and there is no evidence U.S. Bank or SPS agreed to accept the lesser amount—U.S. Bank is entitled to reversal of the judgment. (ROA.1998-1999, 2003-

2004); *Woods-Tucker Leasing Corp. v. Kellum*, 641 F.2d 210, 214 (5th Cir. 1981) ("In order to effect an accord and satisfaction, however, the parties must intend that the payments constitute an accord and satisfaction.")[2]

## C.    The trial court improperly excluded U.S. Bank's corroborative evidence.

An offer of proof is required to perfect an objection to the exclusion of evidence. Fed. R. Evid. 103(a)(2). "It allows an appellate court to reevaluate the trial court's decision in light of the actual evidence to be offered and to determine whether any prejudice resulted from the exclusion of evidence." *Gray v. Lucas*, 677 F.2d 1086, 1100 (5th Cir. 1982). "For this reason, counsel must inform the court as to what counsel intends to show by the evidence and why it should be admitted." *Rodriquez v. Midland Cty. Hosp. Dist.*, No. 21-50635, 2022 U.S. App. LEXIS 14704, at *6 (5th Cir. 2022).

U.S. Bank offered three recordings, defendant's exhibits 18, 19 and 20, of telephone conversations between SPS and a person identifying himself as Mr. Del Rosario on December 16, 2021 and December 20, 2021. (ROA.1530, 2000.) The individual stated that he "sold a property so I had the title company just wire in a huge chunk of money to you guys for payment. I just wanted to make sure you got the wire or if you show it that way you could put it on the account." (ROA.1530,

---

[2] There also has to be a bona fide dispute about the amount owed. *Lopez v. Munoz, Hockema, & Reed, LLP*, 22 S.W.3d 857, 863 (Tex. 2000). There was no evidence of a dispute about the amount owed. (ROA.1967-1968, 1951.)

2204.) After SPS advised the account did not yet reflect the payment, the man requested SPS put a note in its system to reflect that "you spoke to me and that a, let's just put the whole; if we could put like, I don't know, maybe like $160,000 towards principal and the rest towards payments cause I think it was a total of like $189,000." (ROA.1530, 2204.) SPS asked if the payment was a payoff and the man responded "no, no, no, no. I sold another property and I just wanted to use all the money to pay this [loan] down." (ROA.1530, 2204.)

What appears to be the same person called SPS the following Monday, December 20, 2021. (ROA.1530, 2205.) SPS advised the person it received a payment from Texas Title but the funds "were short $36,008.42." (ROA.1530, 2205.) The man responded "no, no, no, no, no. Its not a, its not a payoff. I just wanted to wire in money to get my house out of foreclosure, so that's not a payoff." (ROA.1530, 2205.) The call dropped and the same person called SPS again and spoke to a different representative. (ROA.1530, 2206.) SPS asked if the prior representative made him aware the payoff funds being short and the man responded "yeah, see that's the problem, that's not a payoff. I sold one of my other properties and I had the title company wire in all my proceeds to this account but I'm not trying to pay it off." (ROA.1530, 2206.) He requested the funds be applied to bring the past due payments and escrow current, $120,000 of the remaining applied to principal and the remaining $10,000 or so be applied to future payments. (ROA.1530, 2205.)

Appellees objected to these recordings as irrelevant. (ROA.2000-2001.) The district court sustained the objection and denied U.S. Bank an opportunity to explain the relevance of the recordings. (ROA.2000-2002.)

The recordings are clearly relevant. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Among other things, the recordings corroborate (**1**) the accurate payoff as of December 15, 2021 was $226,733.41—not $189,859.46—foreclosing any contention that Texas Title paid the loan in full, (**2**) there was no dispute about amount due, defeating any claim of accord and satisfaction, (**3**) SPS never agreed to accept less than the full payoff; indeed, both SPS and the caller acknowledged a remaining balance after application of the $189,859.46—further negating any accord-and-satisfaction theory, (**4**) SPS had to be lied to in order to accept the $189,859.46 and, ultimately, (**5**) SPS did not alter its own payoff statement to understate the amount due and fax it to Texas Title from a facsimile number it did not have access to. (ROA.1530.) Plainly the person on the other end of the telephone was purposefully deceiving SPS to convince it to accept less than a full payoff and makes it more probable than not that SPS did not provide Texas Title with the Altered December 15, 2021 Payoff Statement.

## V.     CONCLUSION

This trial court's judgment declaring U.S. Bank's lien released and unenforceable should be reversed.

Date: October 6, 2025                    Respectfully submitted,


                        */s/ Michael J. McKleroy*
                     Michael J. McKleroy
                     SBN: 24000095, FBN:  576095
                     mmckleroy@hinshawlaw.com
                      *--Attorney in Charge*
                     HINSHAW & CULBERTSON LLP
                     1717 Main Street, Suite 3625
                     Dallas, Texas 75201
                     telephone: 945-229-6380
                     facsimile:  312-704-3001

                     Alfredo Ramos
                     SBN: 24110251, FBN:  3687680
                     framos@hinshawlaw.com
                     HINSHAW & CULBERTSON LLP
                     5151 San Felipe, Suite 1380
                     Houston, Texas 77056
                     telephone: 346-553-4512
                     facsimile:  312-704-3001
                     **ATTORNEYS FOR DEFENDANT-**
                     **APPELLANT**

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2025, I electronically transmitted the attached Brief of Appellants to the Clerk of the Court of the United States Court of Appeals for the Fifth Circuit using the Court's ECF System, which sent a Notice of Electronic Filing to the attorneys of record who have consented in writing to accept this notice as service of this document by electronic means. I further certify that I have sent a copy of this document via United States First Class Mail, postage prepaid, to the attorneys of record.

Michael Keller
5440 Harvest Hill Road, Suite 214
Dallas, Texas 75230
**VIA CM/ECF AND**
**VIA FIRST CLASS MAIL**

_/s/ Michael J. McKleroy, Jr._
Michael J. McKleroy, Jr.


## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to FED. R. APP. P. 32(a)(7)(B), this brief contains 4026 words. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Windows, version 11 in Times New Roman font 14-point type face.

_/s/ Michael J. McKleroy, Jr._
Michael J. McKleroy, Jr.